# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FLOYD BERNARD, | |
| Plaintiff-, | NO. 3:15-CV-01802 |
| v. | (JUDGE CAPUTO) |
| K&D FACTORY SERVICE, INC., | |
| Defendant-. | |

## MEMORANDUM

Presently before the Court is a Motion for Summary Judgment (Doc. 18) filed by Defendant K&D Factory Service, Inc. ("Defendant" or "K&D"). Plaintiff Floyd Bernard ("Plaintiff" or "Bernard") asserts a discrimination claim against Defendant for allegedly terminating his employment based on his race. In moving for summary judgment, Defendant asserts that Plaintiff has failed to establish a prima facie case of discrimination, and that even if he did, he failed to establish that the legitimate, non-discriminatory reasons proffered for his termination were pretextual. Because Plaintiff has raised a genuine issue of material fact as to whether Defendant discriminated against him based on his race, Defendant's motion for summary judgment will be denied.

## I. Background

The facts presented in the summary judgment record, viewed in the light most favorable to Plaintiff, are as follows.[1] Plaintiff Floyd Bernard was first hired by K&D as a service technician on February 3, 2011. (Doc. 1, ¶¶15-16.) Plaintiff was terminated on or about July 9, 2012. (Doc. 19-2, ¶7.) Plaintiff is a black, or African-American, man. (Doc. 1, ¶13.)

Three or four months after Plaintiff received his own truck, Evan Bowen ("Mr. Bowen"), the Sales and Service Manager for K&D's Scranton location, discussed Plaintiff's performance with him, including his weaknesses and what he was doing well. (Doc. 19-1 at 60:7-61:9.) After this initial

---

[1] The Court declines to adopt Defendant's proposal that it ignore the assertions in Plaintiff's Counter-Statement of Facts, at least to the extent those assertions are supported by the record. (Doc. 25, p. 6.) *See also* Fed. R. Civ. P. 56(c)(3), which states "[t]he court need consider only the cited materials, but it may consider other materials in the record."

discussion, Plaintiff spoke with Mr. Bowen approximately every month about his performance. (*Id.* at 61:10-14.) During Plaintiff's employment, K&D invested time and money in him by assigning various individuals to work with him to help train him. (*Id.* at 70:7-71:19.) Plaintiff's supervisor, Mr. Bowen, described Plaintiff's work performance as poor and not meeting the production goals set by K&D.[2] (Doc. 19-4, Ex. D, ¶9.) Plaintiff was one of the lowest performing service technicians with an average production range from 61.15% to 61.97%.[3] (Doc. 19, ¶¶25-28; Doc. 19-4, Ex. D, ¶9; Doc. 19-1 at 81:4-7.) Although Plaintiff was given production statistics after he was provided with his own truck, he was not informed at any point that his job was in jeopardy based on a statistical analysis of his production levels. (Doc. 25, ¶23; Doc. 19-1 at 60:2-65:17.) Plaintiff struggled with his performance on servicing ovens. Plaintiff testified that he was not given appropriate training time on ovens, and that Mr. Bowen admitted this to him. (Doc. 19-1 at 62:9-63:1.)

On June 30, 2012, Plaintiff was attacked by two men who stole his car. (Doc. 1, ¶19.) Plaintiff was hospitalized and received 12 staples in his head, in addition to treatment for a dislocated shoulder and a "slash" on his elbow. (Doc. 19-1 at 35:10-36:17.) The parties disagree regarding Plaintiff's expected return date at work following this incident. According to Plaintiff, he went to see Mr. Bowen sometime between June 27 and July 1, 2012, and told him he would need to take leave until at least July 12. (Doc. 19-1 at 37:12-38:21.) Mr. Bowen responded that Plaintiff obviously could not work and told him to stay in touch regarding his health status. (Doc. 19-1 at 38:3-14.) According to Defendant, Plaintiff told Mr. Bowen on July 2 that he would be out for three days and would return to work on July 5. Mr. Bowen then repeated this information to Mr. Dibeler. (Doc. 19, p.2; Doc. 19-4,

---

[2] K&D calculates production by dividing billed hours by available hours in a month. Available hours are calculated using 7.5 hours times the number of business days in a given month. K&D's policy set a minimum average production rate of 85%.

[3] Plaintiff asserts that K&D's minimum average production requirements and Plaintiff's average production range are inadmissible because the information "comes from an unverified document submitted to the EEOC in preparation for litigation and not from any official document from the Defendant." (Doc. 25, ¶¶27-28.) However, Dan Dibeler ("Mr. Dibeler"), Chief Financial Officer of K&D, stated in his affidavit that the documents submitted to the EEOC and produced in discovery are true and correct to the best of his knowledge, information and belief. (Doc. 19-3, ¶3.) The Court will therefore treat these factual assertions as admitted, since Plaintiff offered no other reason for disputing them.

2

Ex. D, ¶¶4-5.)

On July 3, 2012, Plaintiff was involved in a subsequent altercation while trying to recover his car. (Doc. 19-1 at 45:2-48:1.) Plaintiff was arrested at the scene, criminally charged, and incarcerated for three days. (Doc. 19-1 at 48:6-49:10.) Plaintiff did not report to work on July 5, 2012, or July 6, 2012. (Doc. 19-3, ¶6; Doc. 19-4, Ex. D, ¶6.) Mr. Bowen stated that he informed Mr. Dibeler that Plaintiff had not appeared at work on these dates. (Doc. 19-4, Ex. D, ¶5.)

After his release from jail on July 6, 2012, Plaintiff called Mr. Bowen because he did not see his service truck at his house. (Doc. 19-1 at 51:1-15.) During this call, Mr. Bowen informed Plaintiff that he was terminated. (*Id.* at 51:17-24.) Plaintiff then spoke with Henry Lane ("Mr. Lane"), the Vice-President/General Manager of K&D, who told him it was the decision of Mr. Lane and Mr. Dibeler to terminate him. (*Id.* at 53:3-54:12.) Plaintiff believes that Mr. Lane and Mr. Dibeler terminated him because he was incarcerated. (*Id.* at 54:1-25, 68:6-11, 74:6-75:23, 79:19-80:3.)

Plaintiff admitted in his deposition that his sole reason for believing he was terminated due to his race was that a white K&D employee named Robert Clark ("Mr. Clark") was not terminated for allegedly doing side work (or "moonlighting") and stealing from the company. (Doc. 19-1 at 84:4-15, 86:12-23, 90:8-12.) K&D had a policy outlining the circumstances under which K&D employees were allowed to moonlight, and it held a meeting with Mr. Clark to make sure he understood the policy. (Doc. 19, ¶¶ 35-38; Doc. 25, ¶¶ 35-38.) Plaintiff asserts that he knew Mr. Clark was stealing because Mr. Clark told him that he stole the use of a company vehicle by using it in an unapproved manner to attend strip clubs. (Doc. 19-1 at 76:13-18.) Plaintiff does not contest K&D's assertion that it had no knowledge that Mr. Clark had ever used a company vehicle for personal reasons, including driving to a strip club. Plaintiff also admits that Mr. Clark had more knowledge than him about how to service ovens, and that Mr. Clark had outstanding production levels and client feedback. (Doc. 19, ¶¶ 42-44; Doc. 19-1 at 72:20-24.) Plaintiff further testified at his deposition that, if there were no issues with Mr. Clark and K&D terminated Plaintiff because he was incarcerated, he would not have a claim against K&D. (*Id.* at 90:8:12.)

Plaintiff has since raised additional facts related to Defendant's termination of Tyler Bennawit ("Mr. Bennawit"), a white employee who was fired following his arrest and incarceration. Mr.

3

Bennawit was employed by Defendant as a "refrigeration technician." (Doc. 19-3, Ex. A.) He was terminated on December 13, 2011 after he was arrested and incarcerated. (Doc. 19-5, Ex. H.) The parties dispute whether he was terminated purely because of his arrest, or because his incarceration caused him to miss work. (Doc. 19 ¶¶45-46; Doc. 25 ¶¶ 45-46.)

## II. Procedural History

On or about December 21, 2012, Plaintiff filed a complaint against Defendant with the Equal Employment Opportunity Commission ("EEOC"), and filed parallel charges with the Pennsylvania Human Relations Commission ("PHRC"). (Doc. 19-2.) On or about July 8, 2015, the EEOC stated that it was "unable to conclude that the information obtained establishes violations of the statutes" and issued to Plaintiff a notice of his right to sue. (*Id.*) On September 15, 2015, Plaintiff filed a complaint against Defendant in the instant action. (Doc. 1.) Following discovery, Defendant filed a motion for summary judgment on April 21, 2017. (Doc. 18.) Plaintiff filed a brief in opposition to this motion on June 2, 2017, (Doc. 26) and Defendant filed its reply on June 23, 2017 (Doc. 30). This motion is therefore now ripe for disposition.

## III. Discussion

### A. Legal Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Wright v. Corning*, 679 F.3d 101, 105 (3d Cir. 2012) (quoting *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). An issue is "genuine" if the evidence is such that a reasonable jury could find in favor of the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Id.* at 248.

When considering whether there are genuine issues of material fact, a court is required to "examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). The standard for summary judgment is not whether a plaintiff would prevail at trial, but

4

whether the Defendant has proven that no issues of material dispute exist. *Anderson*, 477 U.S. at 248. The Court must disregard all evidence favorable to the moving party that a jury is not required to believe. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 151 (2000). At this stage, evidence from the moving party, even if uncontradicted and unimpeached, is not to be considered if it comes from an interested witness. *Id.*

Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256-57. The moving party may present its own evidence or, where the non-moving party has the burden of proof, simply point out to the court that "the nonmoving party has failed to make a sufficient showing on an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to prevail on a motion for summary judgment, the non-moving party must show "specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial." *Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 270 (3d Cir. 2007) (citing Fed. R. Civ. P. 56(e)). Although the non-moving party's evidence may be either direct or circumstantial, and "'need not be as great as a preponderance, the evidence must be more than a scintilla.'" *Id.* (quoting *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005)).

In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Therefore, summary judgment is not appropriate when a case will turn on credibility determinations. *Anderson,* 477 U.S. at 255; *El v. Southeastern Pennsylvania Transp. Auth.*, 479 F.3d 232, 247 (3d Cir. 2007).

**B. Analysis**

Plaintiff's Complaint raises a claim for race discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pennsylvania Human Relations Act, 43 Pa. C.S.A. §951 ("PHRA"). Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e *et seq*. The

5

PHRA is generally interpreted using the same framework as Title VII. *See Kelly v. Drexel University*, 94 F.3d 102, 105 (3d Cir. 1996).

Claims of race discrimination under Title VII are governed by the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of employment discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). This requires a plaintiff to show that: (1) he is within a protected class, (2) he was qualified for the position, (3) he suffered an adverse employment action, and (4) the position remained open and was ultimately filled by someone outside the protected class, or a similarly situated individual outside the plaintiff's protected class was treated more favorably. *Id.*; *see also Doty v. Pike Cnty. Corr. Facility*, 2006 WL 2850632, at *7 (M.D.Pa. Oct. 3, 2006). The determination of whether a prima facie case has been made is a legal one for the court to decide. *Pivirotto v. Innovative Sys.*, 191 F.3d 344, 347 n.1 (3d Cir. 1999).

Once a prima facie case has been established, the burden shifts to the defendant to produce a legitimate, non-discriminatory reason for its actions. *McDonnell Douglas*, 411 U.S. at 802. Once a defendant has put forth such a reason, the plaintiff must then show, by a preponderance of the evidence, that the defendant's proffered reason is pretextual. *Id.* at 804.

*1. Prima Facie Case*

Defendant argues that Plaintiff lacks factual support to establish his prima facie case. This Court disagrees. At the outset, the Court notes that "the burden of establishing a prima facie case of disparate treatment is not onerous" and is "easily met." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). The requirement that a plaintiff establish a prima facie case "merely serves to raise a rebuttable presumption of discrimination by eliminating the most common nondiscriminatory reasons for the employer's treatment of a plaintiff." *Id.* at 253-54 (internal quotation omitted). "Summary judgment is to be used sparingly in employment discrimination cases, especially where, as here, we are viewing the case at first glance." *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 369 (3d Cir. 2008).

Defendant has stipulated that Plaintiff is able to meet the first and third elements of his prima

facie case, *i.e.* that he is a member of a protected class and that his termination was an adverse employment action. Therefore, the Court will address only the second and fourth elements of Plaintiff's prima facie case.

### *a. Plaintiff's Qualification for His Position*

Plaintiff must first show that he was qualified for his position at the time of the adverse employment action. The parties do not dispute that Plaintiff's production levels fell below the minimum prescribed by the Defendant's policy, as described on page 2, *supra*. However, the parties disagree regarding the correct standard to apply to determine Plaintiff's qualification for his position. Defendants argue that the Court should apply the standard articulated in *Stove v. Phila. Sch. Dist.*, 58 F.Supp.2d 598, 604 (E.D.Pa. 1999), and applied in the Second, Fourth and Seventh Circuits, which requires a plaintiff to demonstrate that he performed his position satisfactorily. Plaintiffs argue that the Court should apply the Third Circuit formulation, which requires only that a plaintiff "was qualified." *Marzano v. Computer Sci. Corp. Inc.*, 91 F.3d 497, 506 (3d Cir. 1996).

Courts in the Third Circuit appear generally to treat satisfactory performance as evidence of qualification, but do not require a plaintiff to prove satisfactory performance to meet the second prong of a prima facie case. *See, e.g., Hugh*, 418 F.3d at 268 ("[S]atisfactory performance of duties, leading to a promotion, does establish a plaintiff's qualifications for a job."); *Jalil v. Avdel Corp.*, 873 F.2d 701, 707 (3d Cir. 1989) (finding that plaintiff's "satisfactory performance of duties over a long period of time leading to a promotion clearly established his qualifications for the job."); *Seibel v. Marketplace Direct, Inc.*, 2007 WL 788384, at *2 (W.D.Pa. Mar. 13, 2007), *aff'd* 276 F. App'x 225, 225 (3d Cir. 2008) (finding plaintiff met his burden for a prima facie case of qualification because employer's complaints pertained to plaintiff's performance, not qualifications); *Potoski v. Wilkes University*, 692 F.Supp.2d 475, 484 (M.D.Pa. 2010) ("The fact that Plaintiffs satisfactorily performed their jobs [] is clearly sufficient to create a triable issue of fact on whether each was qualified for the [] position."); *Ackah v. Pennsylvania Dep't of Corrections*, 2009 WL 2951986, at *4 (M.D.Pa. Sept. 14, 2009) (finding that second prong was met where plaintiff was "academically qualified to perform his job, though the record shows that he in fact did not perform his duties satisfactorily."); *Dohner v.*

7

*Clearfield Cty.*, 2009 WL 2762548, at *14 (W.D.Pa. Aug. 28, 2009) ("[I]t is axiomatic in the case law of the Third Circuit that in order to be considered 'qualified' for purposes of a prima facie case of [] discrimination, a plaintiff is only required to show that [he] possessed the objective qualifications for the position at the time of the termination of [his] employment."). Instead, performance is usually considered later in the *McDonnell Douglas* analysis, when a court evaluates whether an employer's justification for termination based on poor performance is pretext. *See, e.g.*, *Weldon v. Kraft, Inc.*, 896 F.2d 793, 799 (3d Cir. 1990) ("We simply decline to treat these subjective assessments [regarding performance] as evidence that [the plaintiff] has failed to establish a *prima facie* case, thereby collapsing the entire analysis into a single initial step at which all issues will be resolved."); *Sweeney v. Roche Diagnostics Corp.*, 2013 WL 6731049, at *8 (M.D.Pa. Dec. 19, 2013) ("[Plaintiff's] failure to perform the job at a satisfactory level of performance [] is a subjective consideration that is more appropriately scrutinized in the second phase of the *McDonnell Douglas* analysis.").

In *Weldon*, the employer offered objective evidence regarding the plaintiff's production levels which showed he was not achieving a sufficient rate of production. 896 F.2d at 794. The Third Circuit noted that this type of objective performance criteria might be appropriate for evaluation during the analysis of a plaintiff's prima facie case, but concluded that it should not do so under the facts at hand because it was "unclear whether the goals constituted a standard of performance expected of all assistant supervisors." *Id.* at 799. Here, as in *Weldon*, Defendant has offered evidence showing that Plaintiff failed to meet objective performance requirements. However, also similar to the facts in *Weldon*, there is evidence indicating that failure to meet these objective productivity levels did not automatically render an employee unqualified for his position in Defendant's estimation. K&D noted in its response to questions by the EEOC that production levels below the required 85% were tolerated for one employee because "he was an asset to the company in terms of generating good will and future service calls from satisfied customers." (Doc. 19-2, Ex. A.) Because it appears Defendant's objective measure of satisfactory performance could be adjusted or supplemented by subjective factors in certain cases, the Court declines to consider this standard as part of a prima facie analysis.

Defendant also argues in its reply brief that Plaintiff could not perform his job satisfactorily

8

at the time of termination because he was injured and temporarily out on medical leave, and ultimately had surgery to repair his shoulder a year and a half later in January 2014. (Doc. 30, p. 9.) The Court declines to adopt Defendant's reasoning on this point, as to do so under these facts (where, significantly, there is no evidence that Plaintiff was terminated due to his physical inability to work) would be to allow any employer to defeat the second prong of a Plaintiff's prima facie discrimination case by simply waiting to terminate the employee until he or she developed a temporary physical issue which required medical leave.

Finally, Plaintiff was employed by Defendant for nearly a year and a half despite his low production numbers, there is no evidence in the record that Plaintiff's job was in jeopardy based on his performance, and Carol Dibeler, President of K&D, stated that Defendant "remained hopeful that [Plaintiff] would develop into a quality technician." (Doc. 19-3, Ex. A.) After ignoring or tolerating Plaintiff's performance issues for over a year, and without raising Plaintiff's performance as a terminable issue at any time until after his termination, Defendant's argument that Plaintiff cannot now make out a prima facie case because he failed to perform his job satisfactorily should not be given weight at this stage of the analysis. *Accord Hugh*, 418 F.3d at 268 (employer was precluded from using a lack of objective qualifications defense, as previously it had ignored those posted qualifications in promoting the employee-plaintiff). Drawing all reasonable inferences in favor of Plaintiff, and mindful that the Plaintiff's burden at this stage is a light one, the Court finds that he has made a prima facie showing that he was qualified for his job.

### b. Inference of Discrimination

Plaintiff must next make a prima facie showing that he was terminated under circumstances giving rise to an inference of discrimination. Plaintiff may do this by showing either that his position remained open and was ultimately filled by someone outside his protected class, or that a similarly situated individual outside his protected class was treated more favorably. *St. Mary's Honor Ctr.*, 509 U.S. at 506; *Doty*, 2006 WL 2850632, at *7. Plaintiff has not submitted any evidence of the former option for satisfying this prong, so his prima facie case will be evaluated only under the latter.

To be considered "similarly situated," a plaintiff must "prove that all of the relevant aspects

9

of his employment situation are nearly identical to those of the [] employees whom he alleges were treated more favorably." *Solomon v. Phila. Newspapers, Inc.*, 2008 WL 2221856, at *15 (E.D.Pa. May 21, 2008) (internal quotations omitted). "Which factors are relevant is determined by the context of each case, but often includes a 'showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.'" *Opsatnik v. Norfolk Southern Corp.*, 335 Fed. App'x 220, 223 (3d Cir. 2009) (quoting *Radue v. Kimberly Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000).

First, Plaintiff testified that Mr. Clark was not fired for driving a K&D company truck to a strip club. (Doc. 19-1 at 76:7-18.) Mr. Clark is not similarly situated to Plaintiff for purposes of the *McDonnell Douglas* analysis: Mr. Clark was much more experienced and his alleged infractions were of a completely different nature. Further, Plaintiff admits that Defendant had no knowledge of Mr. Clark using a company vehicle for personal reasons, so even if Mr. Clark had been similarly situated to Plaintiff, Plaintiff would not be able to show that Defendant treated him more favorably where Defendant was unaware that disciplinary action was called for on his part. (Doc. 25, p. 5.)

However, Plaintiff also offered evidence that Tyler Bennawit ("Mr. Bennawit"), a white K&D employee, was treated more favorably than Plaintiff was. Plaintiff contends that Mr. Bennawit, who was also terminated following his arrest and incarceration, was offered a chance to provide a firm return date before he was terminated by Defendant, while Plaintiff was not. Mr. Bennawit was similarly situated to Plaintiff for purposes of the *McDonnell Douglas* analysis because they each held the position of "Refrigeration Technician," were arrested and incarcerated, and were subsequently terminated by Mr. Lane. *See Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358 (3d Cir. 2008) (finding employees similarly situated, even if they had different supervisors, where person in charge of making relevant decisions was same for all employees).

Plaintiff appears to base his claim of disparate treatment on a portion of the EEOC Referee Decision and Order ("EEOC Decision" or "Decision") regarding Mr. Bennawit's unemployment benefits, which reads "[t]he Claimant's father notified the Employer that the Claimant had been

incarcerated, would not be able to report to work, and the father was not aware when the Claimant would be released." (Doc. 19-1 at 98:7-99:1; Doc. 19-5, Ex. H.) The portion of the EEOC Decision cited by Plaintiff does not necessarily establish that Mr. Bennawit was given a chance to provide a firm return date; it merely establishes that Defendant was informed he could not. However, the second page of the Decision notes that "[t]he Employer credibly testified that the Claimant [Mr. Bennawit] was discharged relating to his incarceration and because he was unable to report to work" (emphasis added). (Doc. 19-5, Ex. H.) In addition, the Decision takes note under "Findings of Fact" that Mr. Bennawit was absent from work on November 28, 29, and 30, 2011, and was scheduled to work from November 28, 2011, through December 2, 2011. (*Id.*) Further, in answering written questions posed by the EEOC, Defendant stated that "Tyler Bennawit (white) was fired [] for failing to report to work. Mr. Bennawit was incarcerated and could not report to work due to his incarceration." (Doc. 19-3, Ex. A.) A reasonable jury could interpret this to mean that the reason for Mr. Bennawit's termination was not solely because he was arrested and incarcerated, but because his incarceration caused him to miss scheduled work days. Plaintiff has consistently asserted that he told Mr. Bowen that he would be out of work until July 12, 2012. (Doc. 25, ¶¶ 5-6; Doc. 19-1 at 37:12-38:21.) If Defendant's policy is not to automatically fire anyone who is arrested, but instead to fire anyone who misses a scheduled work day due to being incarcerated, then the parties' disagreement over whether Defendant expected Plaintiff back at work on July 5 or July 12 is material. A reasonable jury could determine that Plaintiff's testimony that he told Mr. Bowen he would not be back at work until July 12 is credible: Plaintiff testified that he had a follow-up medical appointment on this date to determine the extent of his injuries, and Mr. Bowen had seen the severity of his injuries when Plaintiff visited him to ask for leave. (Doc. 19-1 at 36:16-37:13.) If a jury were to find that Plaintiff was on approved medical leave until July 12, the jury could also infer that Defendant treated Plaintiff differently from Mr. Bennawit by firing him when he did not miss a scheduled day of work.[4] Drawing all reasonable inferences in

---

[4] Defendant points out that Plaintiff has not refuted its assertion that Mr. Bowen told Mr. Dibeler that Plaintiff would return to work on July 5, 2012. Since a jury would not be required to believe this evidence, which is unfavorable to the non-moving party and comes from an interested witness, the Court will not consider it for purposes of deciding the instant motion for summary judgment. *See Reeves*, 530 U.S. at 151.

11

favor of Plaintiff on this issue, the Court finds that Plaintiff has established a genuine issue of material fact regarding whether Defendant treated him differently than a similarly situated individual.

### 2. Defendant's Non-Discriminatory Reason for Termination

Defendant must next "articulate some legitimate, nondiscriminatory reason" for its termination of Plaintiff. The Defendant "need not prove that the tendered reason *actually* motivated its behavior, as throughout the burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994) (citing *Burdine*, 450 U.S. at 253, 254, 256). This burden is "relatively light" and the employer need only introduce evidence which, taken as true, would permit the conclusion that there was a non-discriminatory reason for the unfavorable employment decision. *Fuentes*, 32 F.3d at 763. Defendant has offered evidence that Plaintiff was terminated because of his arrest. (Doc. 19-4, Ex. D, ¶8.) This is sufficient to satisfy the second step of the *McDonnell Douglas* burden shifting framework.

### 3. Evidence of Pretext

Finally, to defeat summary judgment, Plaintiff must raise a genuine issue of material fact that would allow a jury to conclude Defendant's proffered non-discriminatory reason for termination is mere pretext. Proving pretext places a "difficult burden on the plaintiff." *Carlson v. Twp. of Lower Alloways Creek*, 452 Fed. App'x 95, 100 (3d Cir. 2011). It requires the plaintiff to submit evidence that "casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication" or that "allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes*, 32 F.3d at 762. "When a plaintiff relies on the former mode of showing pretext, he 'must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's [stated reason] that a reasonable factfinder *could* rationally find [it] unworthy of credence, and hence infer that the employer did not act for [the stated reason].'" *Saunders v. Apothaker & Assoc., Inc.*, 556 Fed. App'x 98, 101-102 (3d Cir. 2014) (quoting *Fuentes*, 32 F.3d at 765) (emphasis in original). Evidence supporting a Plaintiff's prima facie case may properly be considered at the pretext stage. *Burdine*, 450 U.S. at 255, n. 10. "If a plaintiff demonstrates that the

reasons given for [his] termination did not remain consistent, beginning at the time they were proffered and continuing throughout the proceedings, this may be viewed as evidence tending to show pretext, though of course it should be considered in light of the entire record." *Abramson v. William Paterson Coll.*, 260 F.3d 265, 284 (3d Cir. 2001).

Here, Defendant's explanations for its termination of Plaintiff have shifted over time. Mr. Bowen stated in his affidavit that he believed Plaintiff was terminated "as a result of his incarceration." (Doc. 19-4, Ex. D.) However, in a letter to the EEOC, Carol Dibeler, President of K&D, stated that Plaintiff was terminated due to his "poor performance, unreliability, and failure to act professionally at a customer location." (Doc. 19-4, Ex. F.) Further, Mr. Dibeler stated in his affidavit that he decided to terminate Plaintiff under "circumstances" including Plaintiff's failure to return to work as expected, as well as his incarceration. (Doc. 19-3, Ex. B, ¶6.) Defendant's shifting explanations over time on their own might not be enough to create a jury issue regarding pretext – it is entirely possible that Defendant could have fired Plaintiff due to all of these considerations. However, combined with the fact issues surrounding its potentially different treatment of Mr. Bennawit and whether Plaintiff was supposed to be at work on the days Defendant claims he was, this creates the possibility that a reasonable jury could rationally find Defendant's explanations "unworthy of credence." This issue should therefore be decided by a jury.

## IV. Conclusion

For the above stated reasons, Defendant's Motion for Summary Judgment will be denied.

An appropriate order follows.

| | |
|---|---|
| January 9, 2018 | /s/ A. Richard Caputo |
| Date | A. Richard Caputo |
| | United States District Judge |

13